UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAYNE PORTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17 CV 2268 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Jayne Porter brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Porter's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Porter filed her application for DIB on May 9, 2014, claiming that she became unable to work on October 11, 2013, because of depression, anxiety, stress, ADD, low back pain, and knee

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAYNE PORTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17 CV 2268 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Jayne Porter brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Porter's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Porter filed her application for DIB on May 9, 2014, claiming that she became unable to work on October 11, 2013, because of depression, anxiety, stress, ADD, low back pain, and knee

Page **1** of **19**

joint pain. (Tr. 355, 392.) Porter was 50 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 296-300.) Following an administrative hearing, Porter's claims were denied in a written opinion by an ALJ, dated May 31, 2016. (Tr. 232-42.) Porter then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 19, 2017. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Porter argues that the ALJ "completely ignored the Plaintiff's testimony without conducting a proper credibility evaluation." (Doc. 19 at 3.)

## II. The ALJ's Determination

The ALJ first found that Porter meets the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 234.) She further found that Porter did not engage in substantial gainful activity since October 11, 2013, her alleged onset date. *Id.*

The ALJ found that Porter has the following severe impairments: attention deficit-hyperactivity disorder ("ADHD"), anxiety disorder, obsessive-compulsive disorder, major depression, degenerative disc disease of the lumbar spine, status-post compression fracture at T8, degenerative joint disease of the left knee, and obesity (20 CFR 404.1520(c)). *Id.* The ALJ further found that Porter did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Porter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) in that she can lift, carry, push and pull twenty (20) pounds

joint pain. (Tr. 355, 392.) Porter was 50 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 296-300.) Following an administrative hearing, Porter's claims were denied in a written opinion by an ALJ, dated May 31, 2016. (Tr. 232-42.) Porter then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 19, 2017. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Porter argues that the ALJ "completely ignored the Plaintiff's testimony without conducting a proper credibility evaluation." (Doc. 19 at 3.)

## II. The ALJ's Determination

The ALJ first found that Porter meets the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 234.) She further found that Porter did not engage in substantial gainful activity since October 11, 2013, her alleged onset date. *Id.*

The ALJ found that Porter has the following severe impairments: attention deficit-hyperactivity disorder ("ADHD"), anxiety disorder, obsessive-compulsive disorder, major depression, degenerative disc disease of the lumbar spine, status-post compression fracture at T8, degenerative joint disease of the left knee, and obesity (20 CFR 404.1520(c)). *Id.* The ALJ further found that Porter did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Porter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) in that she can lift, carry, push and pull twenty (20) pounds

> occasionally and ten (10) pounds frequently. She can sit, stand or walk for a total of six hours each during an eight-hour workday. She is able to understand, remember and carry out simple to moderately complex tasks, but can only tolerate an environment with minimal changes in the job setting and duties and with only occasional judgment required to complete tasks. In addition, she is limited to only occasional interaction with the general public, co-workers and supervisors.

(Tr. 235.) In determining Porter's RFC, the ALJ found that Porter's allegations regarding the extent of her limitations were not entirely credible. (Tr. 236.)

The ALJ further found that Porter was capable of performing past relevant work as an accounting clerk. (Tr. 240.) The ALJ therefore concluded that Porter was not under a disability, as defined in the Social Security Act, from October 11, 2013, through the date of the decision. (Tr. 242.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 9, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III. Applicable Law

**III.A. Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the

Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an

opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."

*Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Porter argues that the ALJ erred in assessing the credibility of Porter's subjective complaints by ignoring her testimony. Porter contends that the ALJ's RFC determination is based on this erroneous credibility finding and therefore lacks the support of substantial evidence.

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court

will defer to the ALJ's decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).

In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions. *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. § 416.929(c). The ALJ does not need to discuss each factor separately; rather, the court will review the record as a whole to ensure relevant evidence was not disregarded by the ALJ. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

Here, the ALJ properly discounted the credibility of Porter's subjective complaints based upon the objective medical evidence of record, Porter's daily activities, her ability to work with her impairments for a long period, and other inconsistencies in the record.

The ALJ first summarized Porter's allegations regarding her mental[1] limitations as follows:

---

[1] Porter does not challenge the ALJ's findings regarding her physical impairments. The Court's discussion will therefore be limited to Porter's mental impairments.

> The claimant testified that she is unable to work due to worsening mental instability, including inability to focus, impaired memory, distractibility, difficulty finishing tasks, lack of motivation, poor self-confidence and obsessive-compulsive behaviors. Her depression allegedly keeps her in bed for up to four days per week. She stated that she often experiences "brain freeze," where she is unable [to] concentrate, so she had to walk away from her last job due to repeated reprimands. She stated that working is too stressful and caused her to decompensate. She has always been the breadwinner of the household and must care for her disabled husband, so she feels depressed and overwhelmed with life. She stated that she is a "hoarder" and her house is a mess. She has significant difficulty parting with items. She stated that she has craft projects decades old that she has never finished. She feels as if her whole life has been "chaos" and her medications do not provide adequate relief from her symptoms. She stated that Adderall did help, even causing her to lose weight, but she is unable to afford the Adderall any longer and the free Vyvanse she receives is ineffective in moderating her symptoms.

(Tr. 236.)

As an initial matter, the Court finds Porter's claim that the ALJ "completely ignored the Plaintiff's testimony" lacks merit. The portion of the ALJ's decision quoted above accurately sets out Porter's allegation of disability due to worsening mental symptoms.

The ALJ next discussed the medical evidence regarding Porter's mental impairments. She noted that Porter began seeing Elizabeth Ballard, M.D., with complaints of depression and anxiety in 2012. (Tr. 237.) On September 11, 2012, Porter reported a down and depressed mood, with crying spells. (Tr. 513.) She described difficulties with her relationship with her parents and her husband. *Id.* Upon examination, her mood and affect were pleasant, she maintained good eye contact, her speech was appropriate, and her reason and insight appeared normal. *Id.* Dr. Ballard diagnosed depression with anxiety. (Tr. 514.) She prescribed Wellbutrin and Prozac, and recommended counseling. (Tr. 514.) On April 24, 2013, Dr. Ballard noted the same findings and continued Porter's medications. (Tr. 509-10.) In September 2013, Porter reported that her work had been noticing a change in her behavior and she had been having crying spells. (Tr. 502.) Porter indicated that she dreaded going into the office and complained

of difficulty with concentration. (Tr. 503.) It was indicated that Porter would be screened for ADD. *Id.*

Porter saw Nancy C. Higgins, Ph.D., for a consultative examination on August 29, 2014. (Tr. 643-49.) Porter complained of depression, anxiety, stress, and ADD. (Tr. 643.) She stated that she had experienced symptoms of depression and anxiety since childhood and first saw a psychiatrist at the age of thirteen. *Id.* Porter also described symptoms of obsessive-compulsive disorder, including being fearful about making mistakes a work; and "checking" behaviors. (Tr. 645.) Porter stated that she quit her position in accounting in October 2013 because she had a "breakdown" due to insufficient training by her supervisor. (Tr. 647.) She has not looked for other work and feels like she is not able to work. *Id.* Porter reported daily activities of taking care of her personal hygiene, washing dishes, doing laundry, grocery shopping, driving a car, managing her finances, and watching television. *Id.* She has contact with family and friends about once a month. *Id.* Porter reported impairment in concentration, and noted she has to force herself to do things like household chores. *Id.* Upon examination, Porter's eye contact was good; she did not smile; her speech tone and rate were within normal limits; she was fairly talkative; her affect was stable, constricted in range, and blunted; she appeared depressed; her thought processes were logical, coherent, and mostly goal directed; there were some inconsistencies regarding dates and periods of time provided in her interview; and her insight about her impairments was poor to fair. (Tr. 647-48.) Dr. Higgins diagnosed Porter with major depressive disorder, obsessive-compulsive disorder, generalized anxiety disorder, rule out social phobia, ADHD, and a GAF score of 47-53. (Tr. 648.) She noted that Porter worked continuously from 1998 until 2013, holding responsible positions, but "[u]nfortunately, most of her positions involved accounting and financial reporting, activities that were particularly difficult

for her due to her ADHD." *Id.* She stated that Porter's last job became increasingly stressful, and she lacked the adequate skills for coping with her situation. *Id.* Dr. Higgins stated that Porter's depression, anxiety, and ADHD have significantly interfered with her ability to function, although there was potential for her symptoms to improve with psychotherapy and more intensive medication management. *Id.* Dr. Higgins found that Porter's ability to understand and remember instructions was intact; her ability to sustain concentration and persistence in tasks was intact to impaired, based on some limitations she displayed upon testing; and her ability to interact socially and adapt to the environment was intact too impaired, based on difficulties she reported working with her last boss and coping with job stress. (Tr. 649.)

Porter's counselor, Sharon Callahan, LSCW, completed a mental capacity questionnaire on March 29, 2016. (Tr. 772-76.) Ms. Callahan indicated that she had been seeing Porter twice a month for supportive counseling, and that she was helping Porter with coping skills, and trying to increase her activity level. (Tr. 772.) She identified Porter's symptoms as appetite disturbance, decreased energy, and difficulty thinking or concentrating. (Tr. 773.) Ms. Callahan expressed the opinion that Porter was seriously limited, but not precluded in the following areas: ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (Tr. 774.) She explained that Porter has "some difficulty finishing projects she starts," needs time to rest after doing a chore, and "does not deal well with stress." *Id.* Ms. Callahan found that Porter would be absent from work more than four days per month. (Tr. 776.) She stated that Porter "has trouble motivating herself to do things," although "at times she can motivate herself in spite of her depression to start and finish something that's important to her." *Id.*

Finally, the ALJ summarized the records of Porter's treating psychiatrist, Jay Liss, M.D. (Tr. 239.) Dr. Liss began treating Porter in April 2014, upon the referral of her attorney. (Tr. 631.) Dr. Liss noted symptoms of anxiety, depression, and distractibility. (Tr. 632.) He assessed a GAF score of 50. (Tr. 632.) Porter saw Dr. Liss approximately every two to three months after her initial visit. (Tr. 778-87.) She frequently reported current and past issues with her family, and discussed the status of her application for disability benefits. *Id.* On June 6, 2014, Dr. Liss noted that Porter's "ADD meds work," she had lost weight, and she was able to "get more done, organized," but she was still depressed. (Tr. 630.) In November 2014, Porter reported that she was afraid of a home invasion due to being assaulted in her back yard in 2007. (Tr. 781.) Dr. Liss diagnosed PTSD. *Id.*

The ALJ's finding that the medical evidence was not supportive of Porter's subjective complaints of disabling mental impairments is supported by the medical evidence discussed above. The ALJ properly considered objective medical evidence showing only mild symptoms on examination and improvement with medication. *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

The ALJ also considered Porter's daily activities. She stated that, in her July 2014 Function Report, Porter reported caring for her "physically and mentally disabled" husband, making his meals and doing laundry, feeding a pet, managing the finances, and driving and going out alone to shop for the household needs. (Tr. 237-38, 417-24.) The ALJ stated that, despite her reported inability to concentrate, Porter completed a very detailed Function Report, and indicated that she watches television and movies all day. (Tr. 417-24.) The ALJ found that Porter's level of independent functioning is inconsistent with a finding of disability. (Tr. 238.)

The ALJ did not err in finding Porter's daily activities inconsistent with her allegations of extreme limitations. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that the claimant's complaints were not fully credible).

The ALJ next discussed Porter's work history. She stated that Porter has a solid work history performing highly complex work and has earned a bachelor's degree in science with an emphasis in accounting. (Tr. 238.) The ALJ pointed out that, while Porter claims that her condition has deteriorated to the point where she is unable to work, "the fact that she quit her job due to conflict with her boss does not support a finding that her cognition is too impaired to perform a similar job or one involving only simple, unskilled work." *Id.* She noted that Porter was able to describe her past tasks in great detail at the hearing with no difficulty. *Id.*

Porter challenges the ALJ's consideration of her past work history as a factor detracting from her credibility. She states that the ALJ cites her good work history as "proof that she is capable of working, because she has in the past." (Doc. 19 at 8.) Contrary to Porter's allegation, the ALJ properly considered Porter's work history.

The ALJ acknowledged Porter's claim that her long-standing mental conditions deteriorated to the extent she was no longer able to work in 2013. The ALJ, however, found that this claim of a disabling exacerbation in symptoms was not supported by the record. The only medical source supporting Porter's claim of disabling mental impairments found that the limitations existed since the 1970s. Specifically, on July 29, 2015, Dr. Liss completed a Mental Residual Functional Capacity Questionnaire, in which he expressed the opinion that Porter either had "no useful ability to function" or was "unable to meet competitive standards" in all areas of

mental abilities and aptitudes needed to do unskilled work. (Tr. 652-53.) As explanation, he stated "anxiety and depression limits energy and persistence." (Tr. 652.) He indicated that these limitations had applied since "at least 1970's." (Tr. 654.) Thus, the fact that Porter was able to perform highly complex work for many years with her impairments, without evidence substantiating a disabling exacerbation of her mental impairments, detracts from the credibility of Porter's allegations. *See Goff*, 421 F.3d at 792 (claimant continuing to work with impairments demonstrated that impairments were not disabling).

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Porter's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

The Court now considers whether the RFC formulated by the ALJ is supported by substantial evidence. RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that

must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ made the following determination regarding Porter's mental RFC:

> She is able to understand, remember and carry out simple to moderately complex tasks, but can only tolerate an environment with minimal changes in the job setting and duties and with only occasional judgment required to complete tasks. In addition, she is limited to only occasional interaction with the general public, co-workers and supervisors.

(Tr. 235.)

As support for her determination, the ALJ relied on the following findings and opinions of Dr. Higgins who examined Porter in August of 2014: Porter's attention during the evaluation was "good" and she was able to perform a variety of mental tasks adequately, with only minor errors; she did not have difficulty understanding or remembering instructions; her ability to sustain enough concentration to complete tasks varied from intact to impaired; and she interacted appropriately during the evaluation and reported no history of getting along with others until the conflict she had with her boss at her last job. (Tr. 239, 647-49.)

The ALJ also afforded weight to the opinion provided by Porter's counselor, Ms. Callahan, that Porter is no more than moderately limited in any area of work-related mental function. (Tr. 239, 774-76.) She found that Ms. Callahan's opinion that Porter would miss at least four days a month from work is not supported by the record. *Id.* The ALJ noted that Porter was able to make it to work every day for twelve years before alleging becoming "overwhelmed" with her mental health issues. (Tr. 239.) She stated that there is "nothing persuasive in the record to indicate mental deterioration to the point where she would miss so many days per month from work." *Id.*

With regard to Dr. Liss, the ALJ found that his opinion that Porter has "extreme limitations" is entitled to little weight because it is not supported by the record, including Porter's

own statements about her limitations. (Tr. 239, 652-54.) As previously discussed, Dr. Porter indicated that the disabling limitations he assessed were present since the 1970s, which suggest that she is able to work with the limitations. (Tr. 239, 654) The ALJ stated that the "limitations outlined by Dr. Liss seem exaggerated in light of the claimant's work history and self-reported level of activity." (Tr. 239.) The ALJ next found that Dr. Liss' opinion was inconsistent with his own treatment notes, which primarily consist of Porter complaining about family problems. (Tr. 239.) In June 2014, Dr. Liss noted that Porter's "ADD meds work," and she was able to "get more done, organized." (Tr. 630.) Notably, the ALJ pointed out that Porter began seeing Dr. Liss upon the referral of her attorney. (Tr. 239, 631.) Lastly, the ALJ stated that the contrast between the limitations found by Dr. Liss and those found by Ms. Callahan are "miles apart," and that Ms. Callahan's limitations are more consistent with the record. (Tr. 239.)

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision, the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2). The ALJ provided sufficient reasons for assigning little weight to Dr. Liss' opinion, namely the inconsistency with his own treatment notes, the other evidence of record, and Porter's work history.

Finally, the ALJ considered the opinion of state agency psychologist Stephen S. Scher, Ph.D. (Tr. 284-86.) On September 9, 2014, Dr. Scher expressed the opinion that Porter retains the capacity to understand, recall, and carry out simple to moderately complex instructions and procedures requiring brief learning periods; concentrate and persist at familiar tasks requiring some independent judgment and involving minimal variations; interact as needed for task completion with limited demands for interaction with supervisors and occasional interaction with the public; and adapt adequately to situational conditions and changes with reasonable support and structure. (Tr. 290.) The ALJ afforded "great weight" to this opinion, finding that the opinion was consistent with the medical evidence indicating Porter has no more than moderate limitations in any area of work-related mental functions. (Tr. 240.) The ALJ also remarked that Dr. Scher's findings were consistent with Porter's self-reported level of function and her demeanor at the hearing, "which is that of a woman capable of meeting the day-to-day demands of her past relevant work as an accounting clerk." *Id.*

The Court finds that the mental RFC formulated by the ALJ is supported by substantial evidence on the record as a whole. It is supported by the opinions of Drs. Higgins and Scher, and Ms. Callahan. The RFC is also consistent with the treatment notes of Dr. Liss. Porter has failed to establish the presence of any greater limitations than those found by the ALJ. Thus, the ALJ did not err in determining Porter's mental RFC.

The vocational expert testified that a hypothetical claimant with the RFC found by the ALJ could perform Porter's past work as an accounting clerk; as well as unskilled jobs of collator operator, housekeeping cleaner, and mail sorter. (Tr. 240-41, 273-75.) The ALJ properly relied on the testimony of the vocational expert to find that Porter was capable of performing past relevant work as an accounting clerk. (Tr. 240.) *See Robson v. Astrue*, 526 F.3d 389, 392 (8th

Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). Thus, the ALJ's decision finding Porter not disabled is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

**/s/** Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2018.